WINDELS MARX LANE & MITTENDORF, LLP
156 West 56th Street
New York, New York 10019
Tel: (212) 237-1000
Howard L. Simon
Email: hsimon@windelsmarx.com
Regina Griffin
Email: rgriffin@windelsmarx.com

*Special Counsel to Irving H. Picard, Esq., Trustee for the
Substantively Consolidated SIPA Liquidation of
Bernard L. Madoff Investment Securities LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (BRL)<br><br>SIPA Liquidation<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>Plaintiff,<br><br>v.<br><br>MADOFF FAMILY LLC, PETER MADOFF, MARK MADOFF, ANDREW MADOFF, JENNIFER DICKSON, and SHANA MADOFF,<br><br>Defendants. | Adv. Pro. No. 10-03485 (BRL)<br><br>**AMENDED COMPLAINT** |

Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS" or, alternatively, the "Company" or the "Debtor"), under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, et seq. ("SIPA"), and the estate of Bernard L. Madoff individually, by and through his special counsel, Windels Marx Lane & Mittendorf, LLP, for his Amended Complaint against Madoff Family LLC (the "Entity Defendant")[1], and Peter Madoff, Mark Madoff, Andrew Madoff, Jennifer Dickson, and Shana Madoff (collectively, the "Individual Defendants", and together with the Entity Defendant, the "Defendants"), based on actual knowledge and information and belief, states the following:

## NATURE OF THE PROCEEDING

1.      Bernard L. Madoff's ("Madoff") sons, Andrew and Mark Madoff, his brother Peter Madoff and his niece Shana Madoff, held senior management positions at BLMIS, the company through which Madoff ran his multi-billion dollar Ponzi scheme.  While acting in complete dereliction of their management responsibilities to BLMIS, Peter, Andrew, Mark, and Shana were also among the unlawful recipients of close to $200 million of BLMIS customer funds which they used to fund lavish lifestyles.[2]

2.      Similar to the claims in *Irving H. Picard v. Madoff Technologies LLC, et al.*, Adv. Pro. No. 10-03483 (BRL), the claims herein involve another instance in which Madoff fraudulently transferred millions of dollars of BLMIS customer money to fund his family's personal business investments, this time in a hedge fund and a biotechnology company.

---

[1] Originally organized as "Madoff Family Fund LLC," the Entity Defendant changed its name to "Madoff Family LLC" pursuant to a December 9, 2005 amendment to its Articles of Formation.

[2] *See Irving H. Picard v. Peter Madoff et al.*, Adv. Pro. No. 09-1503 (BRL).

3.     Through this proceeding, the Trustee seeks to avoid and recover $3,000,500 of BLMIS funds that were fraudulently transferred to, or for the benefit of, the Defendants. In the alternative, the Trustee seeks a turnover and/or constructive trust in the Defendants' ownership interests in the Entity Defendant, which rightfully belong to BLMIS' customers, the unwitting but true investors in the Entity Defendant.

## JURISDICTION AND VENUE

4.     This is an adversary proceeding brought in this Court, in which the main underlying SIPA proceeding, No. 08-01789 (BRL) (the "SIPA Proceeding") is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08 CV 10791 (the "District Court Proceeding").

5.     This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and 15 U.S.C. §§78eee(b)(2)(A), (b)(4).

6.     The statutory predicates for the relief sought herein include SIPA, 15 U.S.C. §§ 78fff(b), 78fff-1(a), and 78fff-2(c)(3), the Bankruptcy Code, 11 U.S.C. §§ 101, 105, 541, 542, 544, 548, 550, and 551; New York Debtor and Creditor Law §§ 270-281, and New York common law.

7.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O).

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

# BACKGROUND

9.      On December 11, 2008 (the "Filing Date"), Madoff was arrested by federal agents for violation of the criminal securities laws, including, *inter alia*, securities fraud, investment adviser fraud, and mail and wire fraud.  Contemporaneously, the Securities and Exchange Commission ("SEC") filed the District Court Proceeding against Madoff, which remains pending.  The SEC complaint alleges that Madoff and BLMIS engaged in fraud through the BLMIS Investment Advisory Business (the "BLMIS IA Business").

10.     On December 12, 2008, The Honorable Louis L. Stanton of the District Court entered an order appointing Lee S. Richards, Esq. as receiver for the assets of BLMIS (the "Receiver").

11.     On December 15, 2008, pursuant to SIPA §78eee(a)(4)(A), the Securities Investor Protection Corporation ("SIPC") filed an application in the District Court alleging, *inter alia*, that BLMIS was not able to meet its obligations to securities customers as they came due and, accordingly, its customers needed the protections afforded by SIPA.  On that same date, pursuant to SIPA section 78eee(a)(4)(A), the SEC consented to a combination of its own action with SIPC's application.

12.     Also on December 15, 2008, Judge Stanton granted the SIPC application and entered an order pursuant to SIPA, which, in pertinent part:

        a.      appointed the Trustee for the liquidation of the business of BLMIS pursuant to section 78eee(b)(3) of SIPA;

        b.      removed the case to this Court pursuant to section 78eee(b)(4) of SIPA; and

        c.      removed the Receiver for BLMIS.

13.     Pursuant to sections 78fff(b) and 78*lll*(7)(B) of SIPA, the Filing Date is deemed to be the date of the filing of the petition within the meaning of section 548 of the Bankruptcy Code and the date of the commencement of the case within the meaning of section 544 of the Bankruptcy Code.

14.     By orders dated December 23, 2008, and February 4, 2009, respectively, the Bankruptcy Court approved the Trustee's bond and found that the Trustee was a disinterested person.  Accordingly, the Trustee is duly qualified to serve and act on behalf of the estate of BLMIS.

15.     As the Trustee appointed under SIPA, the Trustee is charged with recovering and paying out Customer Property[3] to BLMIS' customers, assessing claims, and liquidating any other assets of the firm for the benefit of the estate and its creditors.  The Trustee is in the process of marshalling BLMIS' assets, and the liquidation of BLMIS' assets is well underway.  However, such assets will not be sufficient to reimburse the customers of BLMIS for the billions of dollars that they invested with BLMIS over the years.  Consequently, the Trustee must use his broad authority under SIPA and the Bankruptcy Code to pursue recovery for BLMIS' accountholders.

16.     Based upon the Trustee's ongoing investigation, it now appears there were more than 8,000 customer accounts at BLMIS over the life of the scheme.  In early December 2008, BLMIS generated account statements for its approximately 4,900 open customer accounts. When added together, these statements purportedly showed that BLMIS' customers had approximately $68 billion invested through BLMIS.  In reality, BLMIS had assets on hand worth a fraction of that amount.  Customer accounts had not accrued any real profits because no

---

[3] SIPA § 78*lll*(4) defines "Customer Property" as "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property unlawfully converted."

investments were ever made. By the time the Ponzi scheme came to light on December 11, 2008, investors had already lost approximately $20 billion in principal.

17.     As Madoff admitted at his Plea Hearing, he never purchased any of the securities, options, or Treasurys for the BLMIS IA Business and the returns he reported to customers were entirely fictitious. Based on the Trustee's investigation to date, there is no record of BLMIS having cleared a single purchase or sale of securities on any exchange in connection with Madoff's claimed "split-strike conversion" investment strategy.[4]

18.     For all periods relevant hereto, the BLMIS IA Business was operated as a Ponzi scheme and Madoff and his co-conspirators concealed the ongoing fraud in an effort to hinder, delay and/or defraud other current and prospective customers of BLMIS. The money received from investors was not set aside to buy securities as purported, but instead was primarily used to make the distributions to – or payments on behalf of – other investors. The money sent to BLMIS for investment, in short, was simply used to keep the scheme going and to enrich Madoff, his family members, associates, and others, including the defendant entity sued herein, until such time as the requests for redemptions overwhelmed the flow of new investments and caused the inevitable collapse of the Ponzi scheme.

## TRUSTEE'S POWERS AND STANDING

19.     Pursuant to SIPA § 78fff-1(a), the Trustee has the general powers of a bankruptcy trustee in a case under the Bankruptcy Code. In addition, pursuant to SIPA section 78fff(b), chapters 1, 3, 5 and subchapters I and II of chapter 7 of the Bankruptcy Code apply to this proceeding to the extent consistent with SIPA.

---

[4] Madoff did a *de minimus* amount of securities trading outside of the split-strike conversion strategy.

20.     The Trustee is a real party in interest and has standing to bring these claims pursuant to section 78fff-1(a) of SIPA and the Bankruptcy Code, including sections 323(b) and 704(a)(1), because, among other reasons:

     a.     the Defendants received "Customer Property" as defined in 15 U.S.C. §78*lll*(4);

     b.     BLMIS incurred losses as a result of the claims set forth herein;

     c.     BLMIS' customers were injured as a result of the conduct detailed herein;

     d.     SIPC cannot by statute advance funds to the Trustee to fully reimburse all customers for all of their losses;

     e.     the Trustee will not be able to fully satisfy all claims;

     f.     the Trustee, as bailee of customer property, can sue on behalf of the customer-bailors;

     g.     as of this date, the Trustee has received multiple express assignments of certain claims of the applicable accountholders, which they could have asserted. As assignee, the Trustee stands in the shoes of persons who have suffered injury-in-fact and a distinct and palpable loss for which the Trustee is entitled to reimbursement in the form of monetary damages;

     h.     SIPC is the subrogee of claims paid, and to be paid, to customers of BLMIS who have filed claims in the liquidation proceeding. SIPC has expressly conferred upon the Trustee enforcement of its rights of subrogation with respect to payments it has made and is making to customers of BLMIS from SIPC funds; and

     i.     the Trustee has the power and authority to avoid and recover transfers pursuant to sections 544, 548, 550(a), and 551 of the Bankruptcy Code and SIPA §78fff2(c)(3).

## THE PARTIES

21.     The Entity Defendant was organized as a limited liability company under the laws of the State of New York on or about May 1, 2001, with its principal place of business at 34 Pheasant Run, Old Westbury, New York 11568, which at the time, was Peter's residence.

22.     Defendant Peter Madoff is Madoff's brother.  Upon information and belief, when the Entity Defendant was organized, Peter Madoff held a 24.75% membership and ownership interest, and an additional 1% membership and ownership interest as the Manager of the Entity Defendant.  Upon further information and belief, Peter transferred his 24.75% membership and ownership interest in the Entity Defendant to his daughter, Shana, in 2004, but at all relevant times, he retained a 1% membership and ownership interest as the Manager of the Entity Defendant.

23.     Defendant Mark Madoff is Madoff's son.  Upon information and belief, as of October 10, 2008, Mark possessed a 33% membership interest and was the nominal owner of a 24.75% interest in the Entity Defendant.

24.     Defendant Andrew Madoff is also Madoff's son.  Upon information and belief, as of October 10, 2008, Andrew possessed a 33% membership interest and was the nominal owner of a 24.75% interest in the Entity Defendant.

25.     Defendant Jennifer Dickson (formerly Madoff) was the wife of the late Roger Madoff, defendant Peter Madoff's son.  Upon information and belief, when the Entity Defendant was organized, Roger Madoff was the nominal owner of a 24.75% interest in the Entity Defendant.  Upon further information and belief, Jennifer Dickson inherited Roger's 24.75% ownership interest in the Entity Defendant upon his death.

26.     Defendant Shana Madoff is Madoff's niece and defendant Peter Madoff's

daughter. Upon information and belief, Peter Madoff, Shana's father, transferred his 24.75% membership and ownership interest in the Entity Defendant to Shana in 2004. Upon information and belief, as of October 10, 2008, Shana possessed a 33% membership interest and was the nominal owner of a 24.75% interest in the Entity Defendant.

## BLMIS FRAUDULENTLY TRANSFERRED MORE THAN $3 MILLION TO, OR FOR THE BENEFIT OF, THE DEFENDANTS

27. Through the creation of the Entity Defendant, the Individual Defendants perpetuated and/or participated in a fraudulent scheme to divert BLMIS monies to an entity they controlled to enrich themselves. At all times relevant to this proceeding, the Entity Defendant was used as a vehicle to funnel funds out of BLMIS to finance the Individual Defendants' investments.

28. The Trustee has thus far identified two transfers totaling more than $3 million from BLMIS to, or for the benefit of, the Defendants (collectively, the "Transfers"), for which BLMIS received no reasonably equivalent value. The Transfers were used for, among other things, investing in a hedge fund and a biotechnology company.

29. The Transfers that BLMIS made to, or for the benefit of, the Defendants were illegitimate and fraudulent for all of the reasons set forth in *Irving H. Picard v. Peter B. Madoff et al.*, Adv. Pro. No. 09-1503 (BRL) (the "Madoff Family Complaint"), and the factual allegations set forth in paragraphs 2, 6 through 99, and 103 of the Madoff Family Complaint are incorporated by reference as if fully set forth herein.

**BLMIS Improperly Transferred**
**$1 Million to Fund the Defendants' Initial Investment**

30. According to its Operating Agreement, the Entity Defendant was formed on May 1, 2001 as a New York limited liability corporation for the purpose of investing in hedge fund

Morgan Crossroads Fund LP ("Morgan Crossroads") and "such other entities or entity as the manager shall determine."

31. Rather than using their personal funds, the Individual Defendants improperly received money siphoned from BLMIS to finance the Entity Defendant. On May 1, 2001, BLMIS wired $1,000,000 to Morgan Crossroads for the benefit of the Defendants (the "$1.0 Million Transfer"), for which BLMIS received no value in exchange.

32. Upon information and belief, all of the Entity Defendant's financing came from BLMIS.

**BLMIS Fraudulently Bankrolled
the Defendants' Investment in Stemline Therapeutics**

33. On or about July 8, 2004, BLMIS transferred $2,000,500 (the "$2.0 Million Transfer") to the Entity Defendant to finance the Defendants' investment in Stemline Therapeutics, Inc. ("Stemline"), a biotechnology company, for which BLMIS received no value in exchange.

34. One day later, on July 9, 2004, the Entity Defendant transferred $2,000,000 to Stemline to purchase Stemline stock (the "Stemline Stock"), which provided the Defendants with an approximate 14% ownership interest in that entity.

**The Liquidation of the Morgan Crossroads Investment**

35. The Entity Defendant liquidated its Morgan Crossroads investment in November 2005. On December 1, 2006, the Defendants used $250,000 of the liquidation proceeds to purchase additional shares in Stemline. As a result, upon information and belief, as of March 2009, all of the Stemline Stock owned by Entity Defendant was purchased solely with BLMIS customer money.

36. The balance of the Morgan Crossroads liquidation proceeds resided in: (i) four Credit Suisse Securities (USA) LLC accounts containing approximately $384,000 in cash and equity as of February 2009, and (ii) a JPMorgan Chase account holding approximately $29,000 as of March 2009 (collectively, the "Accounts").

37. Accordingly, the Trustee is entitled to avoid and recover the foregoing Transfers made to, or for the benefit of, the Defendants and any rights and value associated with the Stemline Stock and the Accounts should inure to the benefit of BLMIS' customers.

## KNOWLEDGE OF THE FRAUDULENT NATURE OF THE TRANSFERS IS PROPERLY IMPUTED TO THE ENTITY DEFENDANT

38. Peter, Mark, Andrew, and Shana – each of whom held senior management positions at BLMIS entailing legal compliance and/or supervisory responsibilities – were completely derelict in fulfilling their duties to BLMIS. As spelled out more fully in the Madoff Family Complaint, had Peter, Mark, Andrew, or Shana performed their duties with any level of professional diligence, they would have detected the Ponzi scheme years ago. They either knew of the fraud, or intentionally shut their eyes to it.

39. Without regard to the extent to which the Individual Defendants knew of Madoff's fraudulent scheme, each knew, or should have known, that they were not entitled to these distributions of "free" company money to fund business ventures for which they were the intended beneficiaries.

40. Peter Madoff served as Senior Managing Director and CCO of BLMIS. He is also the Manager of the Entity Defendant sued herein. Consistent with his roles at BLMIS and the Entity Defendant, Peter knew, or should have known, of the fraudulent nature of each of the Transfers sued upon. Thus, his knowledge of the fraudulent nature of these Transfers is properly imputed to the Entity Defendant.

41.    Shana Madoff was responsible for monitoring BLMIS' operations and ensuring its compliance with federal and state laws and regulations.  As Compliance Director of BLMIS, Shana was, or should have been, aware of the fraudulent nature of the Transfers sued upon herein.  Thus, her knowledge of the fraudulent nature of these Transfers is properly imputed to the Entity Defendant.

42.    Mark and Andrew Madoff were also both FINRA-registered securities principals of BLMIS, and as such, had supervisory responsibilities to ensure compliance with the Company's policies and procedures as well as federal securities laws.  Mark and Andrew knew, or should have known, of the fraudulent nature of each of the Transfers, and their knowledge of the fraudulent nature of the Transfers should be imputed to the Entity Defendant.

### NATURE OF THE CAUSES OF ACTION
### AGAINST THE DEFENDANTS

43.    At all times relevant hereto, BLMIS was insolvent in that: (i) its assets were worth billions of dollars less than the value of its liabilities; (ii) it could not meet its obligations as they came due; and/or (iii) at the time of the Transfers to, or for the benefit of, the Defendants described herein, BLMIS was left with insufficient capital.

44.    This adversary proceeding is being brought to recapture the Transfers made to, or for the benefit of, the Defendants, or in the alternative, for turnover and/or constructive trust in the Defendants' ownership interests in the Entity Defendant, so that this customer property can be equitably distributed among all of the victims of BLMIS in accordance with the provisions of SIPA.

45.    The Transfers, the Accounts, the Stemline Stock, and/or the Defendants' ownership interests in the Entity Defendant were and continue to be estate property within the meaning of section 541 of the Bankruptcy Code, as well as customer property within the

meaning of 15 U.S.C. §78*lll*(4), and are subject to turnover pursuant to section 542 of the Bankruptcy Code.

46. All of the Transfers are avoidable and recoverable under sections 544, 548(a), 550(a), and 551 of the Bankruptcy Code, applicable provisions of SIPA, particularly 15 U.S.C. § 78fff-2(c)(3), applicable provisions of N.Y. CPLR 203(g) and 213(8), and N.Y. Debt. & Cred. Law §§ 273-279.

47. To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pleaded in the alternative.

48. The Trustee's investigation is ongoing and the Trustee reserves the right to: (i) supplement the information on the Transfers and any additional transfers; and (ii) seek recovery of such additional transfers.

## FIRST CAUSE OF ACTION
### TURNOVER AND ACCOUNTING - 11 U.S.C. § 542 AND
### SIPA §§ 78fff-2(c)(3) AND 78*lll*(4)

49. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

50. The Transfers, Accounts, and Stemline Stock constitute property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and 15 U.S.C. §§ 78fff-2(c)(3) and 78*lll*(4).

51. BLMIS has equitable and/or beneficial ownership interests in the Entity Defendant, which also constitute property of the estate to be recovered and administered by the Trustee pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4).

52.     As a result of the foregoing, pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4), the Trustee is entitled to: (i) the entry of an Order declaring that the Transfers, Accounts, Stemline Stock, and/or the Defendants' ownership interests in the Entity Defendant are property of the estate; (ii) the entry of an Order directing a turnover of the Transfers, Accounts, Stemline Stock, and/or the Defendants' ownership interests in the Entity Defendant; and (iii) an accounting of all such Transfers, Accounts, and Stemline Stock received by, or for the benefit of, any Defendant.

### SECOND CAUSE OF ACTION
### FRAUDULENT TRANSFERS - 11 U.S.C. §§ 548(a)(1)(A), 550(a), AND 551

53.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

54.     As set forth above, BLMIS made the Transfers to, or for the benefit of, the Defendants.

55.     The Transfers were made by BLMIS with the actual intent to hinder, delay and/or defraud some or all of BLMIS' then existing or future creditors.

56.     The Transfers constitute fraudulent transfers avoidable by the Trustee pursuant to section 548(a)(1)(A) of the Bankruptcy Code and are recoverable from the Defendants pursuant to section 550(a) of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3).

57.     As a result of the foregoing, pursuant to section 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS.

## THIRD CAUSE OF ACTION
## FRAUDULENT TRANSFERS - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

58.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

59.     At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

60.     The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

61.     Upon information and belief, because the Transfers were received by the Defendants with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

62.     As a result of the foregoing, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Defendants.

## FOURTH CAUSE OF ACTION
## UNDISCOVERED FRAUDULENT TRANSFERS – NEW YORK CIVIL PROCEDURE LAW AND RULES 203(g), 213(8), AND NEW YORK DEBTOR AND CREDITOR LAW §§ 276, 276-a, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

63.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

64.     At all times relevant, the fraudulent scheme perpetrated by BLMIS was not reasonably discoverable by at least one unsecured creditor of BLMIS.

65.     At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

66.     The Transfers were made by BLMIS with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS.

67.     Upon information and belief, because the Transfers were received by the Defendants with the actual intent to hinder, delay, and/or defraud the creditors of BLMIS, the Trustee is entitled to attorneys' fees pursuant to section 276-a of the New York Debtor and Creditor Law.

68.     As a result of the foregoing, pursuant to N.Y. CPLR 203(g) and 213(8), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Defendants.

## FIFTH CAUSE OF ACTION
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 273, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

69.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

70.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

71.     BLMIS did not receive fair consideration for the $2.0 Million Transfer.

72.     BLMIS was insolvent at the time of the $2.0 Million Transfer or, in the alternative, BLMIS became insolvent as a result of the $2.0 Million Transfer.

73.     As a result of the foregoing, the Trustee is entitled to a judgment pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, for the benefit of the consolidated estate of BLMIS.

## SIXTH CAUSE OF ACTION
## FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW
### §§ 274, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551

74.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

75.     At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under

section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

76.    BLMIS did not receive fair consideration for the $2.0 Million Transfer.

77.    At the time BLMIS made the $2.0 Million Transfer, BLMIS was engaged or was about to engage in a business or transaction for which the property remaining in its hands after the $2.0 Million Transfer was an unreasonably small capital.

78.    As a result of the foregoing, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, for the benefit of the consolidated estate of BLMIS.

**SEVENTH CAUSE OF ACTION**
**FRAUDULENT TRANSFER - NEW YORK DEBTOR AND CREDITOR LAW**
**§§ 275, 278, AND/OR 279, AND 11 U.S.C. §§ 544, 550(a), AND 551**

79.    The Trustee incorporates by reference the allegations contained in the previous paragraphs of the Amended Complaint as if fully rewritten herein.

80.    At all relevant times there was and is at least one or more creditors who held and hold matured or unmatured unsecured claims against BLMIS that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e).

81.    BLMIS did not receive fair consideration for the $2.0 Million Transfer.

82.    At the time BLMIS made the $2.0 Million Transfer, BLMIS had incurred, was intending to incur, or believed that it would incur, debts beyond its ability to pay them as the debts matured.

83.     As a result of the foregoing, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544(b), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3), the Trustee is entitled to a judgment: (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS.

**EIGHTH CAUSE OF ACTION**
**CONVERSION**

84.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

85.     BLMIS had a possessory right and interest to its assets, including its customers' investment funds.

86.     The Defendants converted the investment funds of BLMIS' customers when it received money originating from BLMIS' customer accounts in the form of payments and other transfers.  These actions deprived BLMIS and its creditors of the use of this money.

87.     As a direct and proximate result of this conduct, BLMIS and its creditors have not had the use of the money converted by the Defendants.

88.     By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

89.     The Defendants' conscious, willful, wanton, and/or malicious conduct entitles the Trustee, on behalf of BLMIS and its creditors, to an award of punitive damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT

90.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

91.     The Defendants benefited from the receipt of money from BLMIS in the form of payments and other transfers which was the property of BLMIS and its customers, and for which the Defendants did not adequately compensate BLMIS or provide value.

92.     This enrichment was at the expense of BLMIS and, ultimately, at the expense of BLMIS' other customers.

93.     Equity and good conscience require full restitution of the monies received by the Defendants from BLMIS.

94.     The Defendants' conscious, intentional, and/or willful tortious conduct entitles BLMIS to recapture profits derived by the Defendants utilizing monies they received from BLMIS.

95.     By reason of the above, the Trustee, on behalf of BLMIS and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

## TENTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST

96.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

97.     As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Defendants for the individual interests and enrichment of the Individual Defendants.

98.     As a consequence of the fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Defendants, they have obtained funds, property, interests, and profits therefrom which in justice and equity belong to the estate, for the use of BLMIS' customers.

99.     The Trustee has no adequate remedy at law.

100.     Because of the unjust enrichment of the Defendants, the Trustee is entitled to the imposition of a constructive trust in: (i) the Defendants' ownership interests in the Entity Defendant; (ii) the Defendants' cash and equity assets residing in the Accounts; (iii) any transfer of funds, property, and assets received by, or for the benefit of, the Defendants from BLMIS; and (iv) any profits and proceeds derived therefrom by the Defendants in the past or on a going forward basis.

101.     In addition, using the sums the Defendants received as a result of the conveyances, fraudulent transfers, conversions, and other wrongdoing, the Defendants acquired the Stemline Stock.  Accordingly, any rights, title, interest, and/or value of the Stemline Stock held by the Defendants should also be held in trust for BLMIS' use, benefit, and account.

## ELEVENTH CAUSE OF ACTION
## ACCOUNTING

102.     The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Amended Complaint as if fully rewritten herein.

103.     As set forth above, the assets of BLMIS have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, conversions, and other wrongdoing of the Defendants for their own individual interests and enrichment.

104.     The Trustee has no adequate remedy at law.

105. To compensate BLMIS for the amount of monies diverted by BLMIS for the benefit of the Defendants, it is necessary for the Defendants to provide an accounting of any transfer of funds, assets, or property received from BLMIS, as well as to any profits and proceeds in the past and on a going forward basis. Complete information regarding the amount of such transfers misused by the Defendants for their own benefit is within their possession, custody, and control.

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in favor of the Trustee and against the Defendant as follows:

(a)     on the First Cause of Action, pursuant to sections 541 and 542 of the Bankruptcy Code and SIPA §§ 78fff-2(c)(3) and 78*lll*(4): (i) the entry of an Order declaring that the Transfers, Accounts, Stemline Stock, and/or the Defendants' ownership interests in the Entity Defendant are property of the estate; (ii) the entry of an Order directing a turnover of the Transfers, Accounts, Stemline Stock, and/or the Defendants' ownership interests in the Entity Defendant; and (iii) an accounting of all such Transfers, Accounts, and Stemline Stock received by, or for the benefit of, any Defendant;

(b)     on the Second Cause of Action, pursuant to sections 548(a)(1)(A), 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing the Transfers be set aside; and (iii) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS;

(c)     on the Third Cause of Action, pursuant to sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Defendants

for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Defendants;

(d)   on the Fourth Cause of Action, pursuant to N.Y. CPLR 203(g) and 213(8), sections 276, 276-a, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the Transfers; (ii) directing that the Transfers be set aside; (iii) recovering the Transfers, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS; and (iv) recovering attorneys' fees from the Defendants;

(e)   on the Fifth Cause of Action, pursuant to sections 273, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS;

(f)   on the Sixth Cause of Action, pursuant to sections 274, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS;

(g)   on the Seventh Cause of Action, pursuant to sections 275, 278, and/or 279 of the New York Debtor and Creditor Law, sections 544, 550(a), and 551 of the Bankruptcy Code, and 15 U.S.C. § 78fff-2(c)(3): (i) avoiding and preserving the $2.0 Million Transfer; (ii) directing that the $2.0 Million Transfer be set aside; and (iii) recovering the $2.0 Million Transfer, or the value thereof, from the Defendants for the benefit of the consolidated estate of BLMIS;

(h)     on the Eighth Cause of Action against the Defendants for the conscious, wanton, willful, and/or malicious conversion of BLMIS' assets, for compensatory and punitive damages in amounts to be determined at trial;

(i)     on the Ninth Cause of Action against the Defendants for unjust enrichment, for compensatory damages in an amount to be determined at trial;

(j)     on the Tenth Cause of Action against the Defendants for the imposition of a constructive trust upon: (i) the Defendants' ownership interests in the Entity Defendant; (ii) the Defendants' cash and equity assets residing in the Accounts; (iii) any transfer of funds, property, and assets received by, or for the benefit of, the Defendants from BLMIS; (iv) any profits and proceeds derived therefrom by the Defendants in the past or on a going forward basis; and (v) any rights, title, interest, and/or value of the Accounts and the Stemline Stock owned or held by the Defendants;

(k)     on the Eleventh Cause of Action against the Defendants, for an accounting of any transfer of funds, assets, or property received from BLMIS as well as any profits and proceeds derived therefrom in the past and on a going forward basis received by the Defendants;

(l)     on all Claims for Relief, pursuant to federal common law and N.Y. CPLR 5001 and 5004 awarding the Trustee prejudgment interest from the date on which any transfer of BLMIS funds, assets, or property were received by the Defendants;

(m)     awarding the Trustee all applicable attorneys' fees, interest, costs, and disbursements of this action; and

(n)    granting the Trustee such other, further, and different relief as the Court deems

just, proper, and equitable.

Dated: New York, New York                 Respectfully submitted,
       September 1, 2010

                                          WINDELS MARX LANE & MITTENDORF, LLP

                                          /s/ *Regina Griffin*
                                          Howard L. Simon (hsimon@windelsmarx.com)
                                          Regina Griffin (rgriffin@windelsmarx.com)
                                          156 West 56th Street
                                          New York, New York 10019
                                          Tel:  (212) 237-1000
                                          Fax: (212) 262-1215

                                          *Special Counsel to Irving H. Picard, Trustee for
                                          the SIPA Liquidation of Bernard L. Madoff
                                          Investment Securities LLC*